Jason M. Drangel (JMD 7204)

Robert L. Epstein (RE8941)

William C. Wright (WCW 2213)

EPSTEIN DRANGEL LLP

Attorneys for Plaintiffs

60 East 42nd Street, Suite 2410

New York, NY 10165

Tel: 212-292-5390

Fax: 212-292-5391

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------X
:
CJ Products LLC and Ontel Products :
Corporation :
:
Plaintiffs :
v. : Civ Action No. 11- 0715 (RRM)
:
Snuggly Plushez LLC and Berkant Keiskbas :
Defendants :
:
---------------------------------------------------X

I, Brian Wright, hereby declare as follows:

1. I am general counsel for Plaintiff CJ Products. I have personal knowledge of the facts hereinafter set forth.

2. I make and submit this affirmation in connection with Plaintiffs' motion for a preliminary injunction.

3. Plaintiff CJ Products LLC "(CJ)" is a gift and toy company involved in, among other things, the development, production, sale, and distribution of gift and toy products. One of the main components of CJ's business encompasses the production, sale and distribution of a combination stuffed animal and functional

pillow product sold under the distinctive PILLOW PETS™, MY PILLOW PETS® and IT'S A PILLOW, IT'S A PET, IT'S A PILLOW PET® trademarks (cumulatively referred hereinafter as "Marks") ("Pillow Pets Product"). A sampling of the Products are shown in **Exhibit A** and below.



4. The Pillow Pets Products have achieved great success since their introduction in 2003. The success of the Pillow Pets Product is due in part to CJ's unique pillow and stuffed animal plush toy combination design shown below:



5. The success is also due to CJ's marketing and promotional efforts and the use of the highest quality materials and processes in making the Pillow Pets Product. These efforts include advertising and promotion through CJ's websites, television publicity, print and other internet-based advertising, thousands of

authorized major retail outlets domestically and abroad, participation in over 200 trade shows annually, and celebrity charity functions, among other efforts.

6. CJ has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Marks and Pillow Pets Products. For example, CJ spent over One Million Three Hundred and Fifty Thousand Dollars ($1,350,000.00) on media advertising from September 2009 to March 2010 alone, and at one point in 2010 was spending nearly One Million ($1,000,000.00) Dollars per month. Plaintiff's Pillow Pets™ have been the subject of a multi-year, tens of millions of dollars As Seen On TV promotion.

7. The success of CJ's Pillow Pets Products, and other related products and services is not due to CJ's promotional efforts alone. Rather, CJ owes a substantial amount of the success of the Pillow Pets Products to its consumers, and word of mouth buzz consumers have generated. In fact, a wide array of newspapers, magazines and television networks have featured stories in which parents, children and prominent celebrities have enthusiastically described their love and enjoyment with the Products.

8. Furthermore, CJ has won several family oriented consumer awards, such as the 2009 iParenting Media Excellent Product Award and the 2009 Dr. Toy Best Vacation Product Award, both of which have a substantial market following for credible and objective testing and reviewing.

9. For the Christmas 2010 season, Pillow Pets Products were recognized on the Toys R Us 2010 Hot Holiday Toy List, given a Five Star Rating by Wal-Mart for Toys for 2010, were the number on selling toy on Amazon.com and

identified as a Top Five "Hard to Find Gift" by Ebay, among other top holiday gift lists, samples of which are evidenced in **Exhibit B** hereto.

10. Plaintiff Ontel is a leading marketer of quality, innovative consumer products. Ontel promotes and sells its products through national direct response television commercials commonly called "As Seen On TV." Ontel also markets its products at the retail level by well-known retail and wholesale outlets such as Wal-Mart, Target Stores, Bed Bath & Beyond, CVS and Walgreens. Ontel also promotes and sells its products through its and its retail customers' websites on the Internet.

11. In 2010, CJ granted Ontel the exclusive license to manufacture, market, advertise and promote, sell, offer for sale and distribute Pillow Pets Products in a number of markets and in association therewith has granted Ontel an exclusive license to all related intellectual property (Marks and Copyright Works).

12. In 2010, Ontel began to sell the Pillow Pets Products to its mass market customers and since that time has sold millions of Pillow Pets Products.

13. CJ and Ontel's (collectively "Plaintiffs") efforts, promotions, and the word-of-mouth buzz have put the Marks and Pillow Pets Products at the forefront of people's minds.

14. Consumers, purchasers and the members of the public have become familiar with CJ's Marks and Pillow Pets Products and services, and have come to recognize the Marks, Pillow Pets Products, and services and associate them exclusively with CJ.

15. Among others, CJ owns the following U.S. trademark registrations/applications for its Pillow Pets Marks:

| | |
|---|---|
| **MY PILLOW PETS®** | U.S. Reg. No. 3,762,061 |
| **IT'S A PILLOW, IT'S A PET ... IT'S A PILLOW PET!®** | U.S. Reg. No. 3,944,372 |
|  ® | U.S. Reg. No. 3,762,062 |
| **PILLOW PETS**™[1] | U.S. Ser. No. 77,940,244 |

16. CJ owns copyrights in and related to the Pillow Pets Products (CJ's Copyrights"). CJ's Copyrights protect the various proprietary animal designs within the line of Pillow Pets Products. The line is updated from time to time to add new animal designs. For example, CJ owns the following Certificate of Registration numbers:

```
VA001674376    VA0001674366    VA0001674373    VA0001678146
VA001674379    VA0001678132    VA0001674372    VA001674368
VA0001678130   VA0001674374    VA0001678138    VA0001674377
VA0001679223   VA0001678144    VA0001674371    VA0001678140
VA0001678142   VA0001674364    VA0001679221    VA0001674365
VA0001665417   VA0001665418    VA0001674375    VA0002674370
```

as well as numerous common law copyrights. (cumulatively hereinafter referred as ("CJ's Copyrights") (collectively attached hereto as **Exhibit C**).

---

[1] Defendant Snuggly Plushez opposed this application on the grounds that the mark is generic/highly descriptive.

17. Plaintiffs were made aware that Defendants were selling copies of copyrighted Pillow Pets Products. Defendants have not been granted a license to produce or sell such works.

18. I compared the items offered by Defendants to the CJ Copyrighted Works and easily discovered that many are very similar designs based on our copyrighted designs. For the purposes of this motion, we allege infringement of the following animal type designs: lady bug, bumble bee, panda, penguin, bear, duck, dolphin, cow, frog and monkey. Photographs of the infringing Defendants plush toy products are attached hereto as **Exhibit D**; CJ's corresponding Copyrighted designs are attached hereto as **Exhibit E**; and a side by side comparison of the respective party designs (Plaintiff's Pillow Pet is on the left in each photo) are attached hereto as **Exhibit F**.

19. As you can see in the side by side comparison in **Exhibit F** (Plaintiff's Pillow Pet is on the left in each photo), Defendants' plush toy products are nearly identical to CJ's Copyrighted Works in appearance, shape, pose, feel and patterns.

20. I summarize below the similarities between our Pillow Pets Products and Defendants' plush toys. As a starting point, each animal pair (except the dolphin) is comprised of the following attributes:

   a. -a rectangular 18 inch pillow with a long pile fabric top, short pile fabric bottom and four triangular, short pile fabric corners;
   b. -an animal head extending from the center of one of the long sides of the rectangular pillow;
   c. -a plush rectangular hook attachment strap (with plush safety closure) extending from the center of one of the short sides of the rectangular pillow and corresponding loop attachment on the opposite short side of the rectangular pillow;

    d. -when the hook and loops are connected they pull the center short sides of the pillow together so that the four corners of the body extend down and out forming four legs and feet supporting an animal body in a standing position.

21. As for the specific lady bug, bumble bee, panda, penguin, bear, duck, dolphin, cow, frog and monkey designs, except for the substitution of dark black for dark brown in the yellow/brown body, head, mouth, arms and legs of the Bee, all patterned fabric colorings and designs for each paired animal are near identical. See **Exhibit F** (Plaintiff's Pillow Pet is on the left in each photo) showing a side by side comparison of each pair.

22. In addition, each animal face configuration (head, mouth, ears and nose), tails and in the case of the bee (wings) are near exact duplicates of coloring, appearance, shape, size, pose, feel and pattern except Defendants have added sewn eyes as opposed to Plaintiffs' black bead eyes.

23. To show how close the designs actually are, I enclose as **Exhibit G** an image of our Pillow Pets (left) sitting next to Defendants' Plushez (right) for the Bumble Bee, Lady Bug and Duck.

24. Plaintiffs have spent a great deal of time and effort to create what is known as a "collectible market" for its soft plush toys. By marketing our Pillow Pets line with emphasis on its status as a collection, we have created a "niche" in the market for our product line.

25. When an item which looks substantially or exactly like one of CJ's plush toys is offered for sale in connection with the trademark Pillow Pets™ (or variations thereof) and terms such as "authentic" or "official" or "As Seen on TV", it

destroys not only the collectible market created by Plaintiffs but the inherent value of Plaintiffs intellectual property, because its copyrighted designs and trademarks will no longer be considered unique by the public, and therefore are no longer desirable as collectible items.

26. This harm is extremely difficult to quantify, and would be very difficult to correct once it occurred. Time will only increase the impact of these infringing sales. The only way to prevent further dilution of our market and CJ Copyrights and Pillow Pets Marks is to stop the continued sale of these items by Defendants.

27. Flooding the market with a product infringing the CJ Copyrights will not only result in lost sales, but will impair our reputation for unique goods. Given the near identical nature of Defendants' plush toys and the Copyrighted plush toys, it is extremely likely that consumers will confuse the two. Because customers associate the Copyrighted plush toys with CJ, any defects or dissatisfaction with the Defendant's version of these items will likely be attributed to Plaintiffs.

28. Further, sales of the Pillow Pets line of plush toys is a substantial part of our business, and the great popularity of the Pillow Pets line of plush toys enables us to obtain new accounts and business relationships. Even when the popularity of the Pillow Pets line of plush toys begins to wane, we may well be able to sell new designs to accounts that have purchased the Copyrighted Plush Toys. If Defendants are permitted to market substantially similar plush animals, we will never know of the accounts and business relationships that it has lost due to Defendant's sales.

29. One of the most important aspects of the toy business is the trust and confidence that its customers (both the ultimate retail customer and retail resellers) develop in the exclusivity of the design and in the materials and craftsmanship utilized in its production. Defendants' sale of imitation goods impairs the integrity of the brand name as well as its reputation and good will, all developed over many years at substantial expense. The sale of infringing designs has already negatively affected our relationship with some customers.

30. Plaintiffs take great care in instituting quality care for the manufacture of our Pillow Pets Product line. The products are all made of new, quality materials. Since the product is both a pillow and a children's toy it is subjected to numerous state and federal laws, including Federal and state children's products labeling laws.

31. Plaintiff's product bears a label that indicate that "all Pillow Pets plush toys have been inspected to meet or exceed U.S.A., U.K. and European safety requirements"; includes a description of the material composition of the product; a certification by the manufacturer that "the materials are described in accordance with law"; the name and address of the importer; product care instructions; and age appropriateness information. See below:



32. Defendant's product contains only one label that indicates: "all new material – polyester fibre – ages 3 and up – surface washable – made in china". Nowhere on the label (or otherwise on the product) is there a certification by the manufacturer that "the materials are described in accordance with law"; nor is the address of the importer identified.

33. The Consumer Product Safety Act requires mandatory self-certification and testing for all such products. Before importing for consumption or warehousing or distributing in commerce any children's product that is subject to a children's product safety rule, every manufacturer of such children's product (and the private labeler of such children's product if such children's product bears a private label) shall submit sufficient samples of the children's product, or samples that are identical in all material respects to the product, to a third party conformity assessment body to be tested for compliance with such children's product safety rule; and based on such testing, issue a certificate that certifies that such children's product complies with the children's product safety rule based on the assessment of a third party conformity assessment body accredited

to conduct such tests. A manufacturer or private labeler shall issue either a separate certificate for each children's product safety rule applicable to a product or a combined certificate that certifies compliance with all applicable children's product safety rules, in which case each such rule shall be specified. We are in full compliance with U.S. federal and state testing requirements. A copy of a sample test for our Pillow Pets Products accompanies this declaration as **Exhibit H**.

34. We recently received a letter from the Attorney General of Missouri indicating that they received a complaint from a consumer about our Pillow Pets Products. The letter attached a copy of the documented complaint. See **Exhibit I** hereto.

35. The complaint referenced a product received by the consumer through Pillowpets.tv on November 15, 2010. We know that, at that time, Pillowpets.tv was selling Defendants' Plushez products through Pillowpets.tv. The company that owns the pillowpets.tv website has ceased activities and the website became inactiveas a result of a lawsuit filed by CJ. However, the same website has been reborn at Defendant's pillowpets.co URL.

36. The Missouri State's attorney wrongly assumed the product originated with us and sent us the notice and demand that we take care of the complaint.

37. The complaint indicated that the consumer did a Google search for "Pillow Pets" and when they saw a link for the "official" Pillow Pets website they purchased goods. The unit received by the consumer had hair falling out and a hole in the neck. The consumer tried to contact the company regarding a refund but could not get through by phone.

38. This is not the only complaint we have seen concerning the Plushez products. On Amazon.com, where the Plushez products are listed as "Pillow Pets", we have seen evidence of consumer confusion and complaints indicating:

> "it had very little stuffing and the velcro did not work"; "would not recommend this item at all. Very cheap and ugly face on it"

> "I didn't know there is an original, but the tag says this is it,. The price was better than anyones as well. She did tell me it had two holes in it."

> "This "pillow pet" is NOT the brand name pillow pet that you are expecting!!! I accidentally bought this "pillow pet" on my smart phone only to realize later that it was a complete fake when I checked my order on my computer (with a nice BIG screen). I immediately tried to cancel the order, but Amazon was unable to stop it, saying it was probably boxed and waiting to be put on a truck. Soon it shipped and a couple of days later it was on my door step, along with the real one that I ordered as soon as I realized my mistake. I opened them up and then compared the two pillow pets. The differences in quality were HUGE! Upon first glance the two were about the same size, but the faces and panda markings were slightly different. The FAKE one: The only nice thing I can say about the fake one is that the white sections were brighter. The fabric was VERY cheap and not very soft. When you rubbed the fabric in the "wrong" direction, it was apparent that the fabric was anything but plush. It looked as though a lot of the "fur" had been pulled out, but it hadn't... That was the way it had been manufactured. CHEAP!!! The REAL one: Sure the white sections were a VERY slight hue of yellow when compared to the fake, but it was ooh SOOO soft! And the fabric was of a MUCH better quality. When I rubbed the fabric of the real pillow pet the wrong way, it was so plush that you could barely see the fabric that it was woven into. I didn't need any more time to compare the two... Pillow Pets are supposed to be soft and cuddly and this one was obviously a cheap fake! I quickly boxed it up in it's original packing box, affixed my newly printed return address label, and handed it off to the UPS lady the next time she stopped by. So, if you are looking for an authentic Pillow Pet, steer clear of this one... You will only be disappointed!"

> "This thing just feels cheap - it's already falling apart after only a few hours of cuddling. The nose is made of cheaply sewn threads

that fall apart, and the fur sheds off when rubbed too heavily. I strongly recommend not buying from this seller - it's an inferior product being sold at a higher price than other genuine pillow pets."

I bought this thinking it was a real pillow pet but the brand is something else. I didn't see any issue with its construction/durability. My little cousin absolutely loved it. He had no idea it was not the actual brand thank god. But he hugged me several times and told me that it was his favorite Christmas present he got. So overall I think it's a pretty good substitute! My only complaint is that the description acts like it is an actual Pillow Pet and it is not.

The yellow started coming off the first day but I think she'll get to enjoy it for a while.

This Pillow Pet was purchased at the request of my granddaughter, who is in love with horses. Although the product was new, it arrived very flat and with 2 seams needing repair. I repaired the seams and fluffed it as best I could (I think it needed more stuffing).

I am pleased for she loves it very much, but as a parent I have some issues with it: - the mane is made of some fluffy stuff that comes off in bunches, like a cat's or dog's hair and all over the apartment. When you lay on it it goes into your mouth, nose etc, very irritating. I am terribly tempted to "trim" the mane and the tail so it would be more comfy.

See **Exhibit J** hereto with representative (highlighted) samples of complaints downloaded from the Amzon.com website that are no doubt attributed to our Pillow Pets products.

39. We cooperated with the Delaware Attorney General's Office recently who conducted seizures of counterfeit Pillow Pets products at kiosks in malls in Delaware and New Jersey after receiving consumer complaints. Delaware Attorney General Beau Biden indicated in a press release that there is a concern since the goods are for children and since the manufacture and distribution of

these goods bypasses regulatory controls, they are potentially dangerous. See **Exhibit K** for an article discussing the Delaware and New Jersey actions.

40. We are aware that there have been many charity drives for Pillow Pets for sick or needy children. Attached as **Exhibit L** are a number of articles on the subject. Defendants have falsely associated themselves with a charity drive for Plaintiffs goods – agreeing to supply goods if possible. Attached as **Exhibit M** is a page from Defendants' Facebook page where they mention the contribution in response to an article on one such charity drive for Plaintiffs' products.

I declare under the penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: 5/3/2011        By: /s/ Brian A. Wright

Brian Wright