Daniel C. Marotta (DM-2581)
GABOR & MAROTTA LLC
*Attorney(s) for Defendants*
1878 Victory Boulevard
Staten Island, New York 10165
TEL: (718) 390-0555
FAX: (718) 390-9886

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CJ Products LLC and Ontel Products
Corporation,

                                  Plaintiffs,

                                  **DECLARATION IN OPPOSITION**

                                  Civ. Action
                                  No. 11-0715

v.

Snuggly Plushez LLC and Berkant Keiskbas,

                                  Defendants.

----------------------------------------------------------------X

I, Daniel C. Marotta, hereby declare as follows:

1.    I am a partner of the law firm of Gabor & Marotta LLC, attorneys for the Defendants in this action, and submit this declaration in opposition to Plaintiffs' motion for a preliminary injunction.

**PLAINTIFFS' FIRST TRADEMARK REGISTRATIONS**

2.    Upon information and belief, since at least 2007, The Plaintiff CJ Products ("CJ") has used the trademark, "My Pillow Pets" in connection with the sale of its pillow pet products. When Plaintiffs first filed and registered the trademark, "My Pillow Pets," on February 4, 2008, Plaintiffs included the following disclaimer:

**"NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PILLOW PETS" APART FROM THE MARK AS SHOWN."**

Attached as **Exh. A** is a true and accurate copy of an internet print out from the United States Patent and Trademark Office ("USPTO") website database, http://www.uspto.gov/trademarks, of the Plaintiffs' March 23, 2010 certificate of registration for "My Pillow Pets," which includes the above disclaimer on its face. The USPTO had issued objections in the form of two (2) Office Action letters, then approved the mark for publication, but required the above disclaimer to approve the mark. Copies of the Office Action letters are included in **Exh.A** following the certificate.

3. Plaintiff also obtained another registration, for the mark "My Pillow Pets Its Your Pillow And A Pet, It's A Pillow Pet," on March 23, 2010, with a similar disclaimer:

**"NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PILLOW PETS" AND THE PICTORIAL REPRESENTATION OF THE GOODS APART FROM THE MARK AS SHOWN."**

Attached as **Exh. B** is the Plaintiffs' trademark registration for "My Pillow Pets Its Your Pillow And A Pet, It's A Pillow Pet," including the above disclaimer.

4. Plaintiffs continue to use the trademark "My Pillow Pets," which appear on labels of products sold by Plaintiffs. See **Exh. C** (photo of "My Pillow Pets" label).

5. Plaintiffs do not have a U.S. trademark registration certificate for "Pillow Pets" as a word mark.

2

6. It is only relatively recently that Plaintiffs have sought to register the phrase "Pillow Pets" as a brand and seek exclusive rights with respect thereto. On February 19, 2010, Plaintiff filed a trademark registration for "Pillow Pets," which application is pending.

7. The Plaintiff CJ received two sets of objections from the USPTO regarding its attempt to register this alleged word mark. See **Exh. D** (copies of USPTO Office Action Letters). The USPTO noted both that the proposed mark "merely describes the composition of the goods...The goods are pillows in the form of pets" (Office Action dated May 13, 2010), and that Plaintiff's two prior registrations disclaimed exclusive rights to the same term for the same goods (Office Action dated September 27, 2010).

8. Ultimately the trademark office relented and published "Pillow Pets" for opposition. Defendant then filed objections and commenced an opposition proceeding. Attached as **Exh. E** is a copy of Defendant's objections, filed on February 9, 2011, to Plaintiffs' trademark registration for "Pillow Pets," which opposition is now pending before the TTAB[1].

9. On August 15, 2010, Defendants filed for the trademark, "PLUSHEZ Pillow Pets," *after* Plaintiff had already publicly disclaimed use of the term "PILLOW PETS." Defendants also disclaimed the exclusive right to use "pillow pets" apart from the mark as shown. See Exh. F (copy of print out of trademark registration for "PLUSHEZ Pillow Pets").

---

[1] Soon after Defendant filed opposition to the Plaintiff's trademark registration, this lawsuit ensued. Plaintiff also filed objections to the Defendant's registration for the Plushez Pillow Pets trademark. At Plaintiff's request, both TTAB opposition proceedings have been suspended pending the outcome of this action.

3

10. The USPTO approved the mark "PLUSHEZ Pillow Pets" and published same for opposition on January 11, 2011. See Exh. **F**. Plaintiff CJ filed objections, and this opposition proceeding is also pending before the TTAB.

11. Plaintiffs issued a cease and desist letter dated November 11, 2010, demanding that Defendant stop using the alleged mark(s) as part of their brand name. See Exh. **G**.

## PILLOW PET IS USED AS A GENERIC PHRASE BY PLAINTIFF AND OTHERS IN THE INDUSTRY

12. The phrase "pillow pets" or some variation thereof is used by numerous companies which sell plush toys and other products.

13. In fact, numerous companies have been using the phrase "pillow pets," and "pet pillows" as early as 1974. Attached as **Exh. H** are twelve (12) trademark registrations filed by some nine (9) separate third parties for the marks "Pillow Pets" or "Pet Pillows," not including those registrations/applications by Plaintiff and Defendant. Some of these applications predate CJ's existence and start as early as 1974 and continue through the 1990's. Also attached as part of **Exh. H** is an accompanying list that details the total of eighteen (18) trademark registrations/applications for such marks, including Plaintiffs' and Defendant's.

14. The R. Dakin Company was the first to manufacturer "pillow pets." The Dakin trademark certificate states a date of first use in commerce of 1964. See accompanying Declaration of Kieskbas at **Exh. A.** (copy of 1974 Dakin certificate for "Pillow Pets").

15. Some five (5) additional companies/individuals listed in the attached Exh. H, besides the Dakin company, have trademark registrations/applications specifically for

4

"pillow pets," including The Happy Times Company, Street Players Holding Corp., SVG Global Inc., Penny Lieberman, and Stewart Lamle.

16. Specifically, Stewart Lamle filed for the mark "Pillow Pets" on December 9, 1991, for pillows that turns inside out to represent an animal-like character.

17. The corporation 2J'S and 1W registered the mark "Pet Pillows" on April 24, 1990, later cancelled on October 28, 1996 and re-registered on September 2, 2003. Flexi-Mat Corporation filed for the same mark on April 16, 1991. Street Players Holding Corp filed for the mark "Pillow Pets" on January 5, 2005, and then Penny Lieberman filed for the same mark on January 25, 2005.

18. Furthermore, at least one company, Multipet International, uses "pillow pets," currently, as part of its brand name:




See **Exh. I.**

19. Not only have others used "pillow pets" to describe their products, but they have also used pillow pets to describe a toy which converts into a bed pillow. See **Exh. J.** (Trademarkia print out describing the Stewart Lamle 1991 filing for the mark "pillow pets" for pillows that turn inside out to represent animal like characters). See also **Exh. H.**

20. Additionally, there are at least three (3) companies/individuals that have registered/applied for a trademark using a variation of "pillow pets," such as "pet pillows," including 2J'S and 1 W, Inc., Flexi-Mat Corp., and Michael W. Schaf.

21. Pillow pet or pet pillow are generic and descriptive phrases to describe these plush toy products that children also use as bed pillows. Pillow pet or pet pillow is the most apt phrase to describe these products. The industry and consumers alike use this generic phrase. Attached as **Exh. K** are internet snapshots that show the public's repeated and common usage of the generic phrase "pillow pets" by search engines, manufacturers, retailers, and consumers. For example, page 1 of Exh. K shows: "New pillow pet turtle 'animallow brand.'" Additionally, on the Google snapshot on page 2 of Exh. K, the search engine shows "Target: shop for pillow pets," "where to buy pillow pets," and "pillow pets are cushion pets," as well as other usage as a common noun.

22. Furthermore, on pages 3 and 4 of Exh. K, iOffer's snapshot illustrates generic usage of "pillow pets" by advertising "new soft cute pillow pet toy gift," "Cuddlee Pet Pillow," "Pondi Panda Pillow Pets Plush & Stuffed Animal," "MacFie Monkey Pillow Pet," "Spicy Puppy Dog Pillow Pets Plush Stuffed animal," "Snuggle Pillow Ladybug Pillow Pet," as well as other advertisements.

23. The phrase "pillow pets" is merely a combination of two generic terms:
Pets – a genus of inanimate objects that people refer to metaphorically; and Pillow – a common item in a household. Therefore, a "pillow pet" is a subset or species of each genus, i.e., a "pillow pet" is a type of pillow, and a "pillow pet" is a type of pet. Each word is found in any English dictionary.

24. Plaintiffs themselves often use pillow pets as a generic or descriptive phrase or as a noun, as do many retailers and search engines. Use of an alleged trademark as a noun is directly contrary to any cogent policy for trademark protection, because use as a noun indicates that the alleged mark is a category, not a brand.

25. Plaintiffs even use the phrase "pillow pet" generically as a common noun, on their website, www.mypillowpets.com as evidenced by Plaintiff's theme song, *"It's a pillow – it's a pet – it's a pillow pet!"* Plaintiff also uses the singular and plural of the phrase interchangeably.

26. Plaintiff also maintains a website, Pillowpetsontv.com, [pillowpetstv.com, getpillowpets.com] advertised as "The Official TV Site of The Original Pillow Pets." The website also uses the alleged mark as a generic noun for the product it identifies. The website has a song that plays when a visitor enters the site. The words being sung use the alleged mark as a noun: "It's a pillow... "it's a pet...it's a pillow pet." Other phrases heard in the song include: "Pillow pets are so soft and huggable," and "Adopt your pillow pet today." The website reads: "Use as a Pillow or...as a Cuddly Pet!"

21. Thus, even CJ uses the phrase "pillow pets" in both a descriptive and generic manner.

27. As noted above, when CJ filed its first trademark application for "My Pillow Pets," it received an USPTO Office Action Letter. The objection was due to the existence of a "Pet Pillow" registration by another company. See **Exh. A**.

28. In its response to the Office Action Letter, CJ claimed "It is not promoted to replace or be sold as a bed pillow or a nighttime pillow for the bed." However, in its advertisements, Plaintiffs clearly depict and describe a pillow for which the child uses

7

while sleeping in a bed. See **Exh. L** (print out of CJ video ad followed by copy of CJ's Response to Office Action Letter dated May 13, 2008).

**PLAINTIFFS' COPYRIGHT DESIGNS ARE NOT ORIGINAL**

29. Plaintiffs' copyright designs are borrowed from pre-existing designs, such as the hugely popular TY's 1990's Pillow Pals Collection:



TY's Pillow Pal          My Pillow Pets

TY Inc. is a leading manufacturer of stuffed toys, made famous by their popular line of Beanie Babies. Attached as **Exh. M** are additional comparisons of TY's Pillow Pals and Plaintiffs' My Pillow Pets (dolphin, whale, horse). Upon information and belief, all of these designs by TY Inc. predate the Plaintiffs' designs and were copied directly by Plaintiff.

30. Furthermore, Plaintiffs' purportedly original copyright designs are merely borrowed, common designs that are used by at least ten (10) companies in the plush toy industry, including: American Mills, Multipet International, Kellytoy, CuddleBudz, Aroma Home, TY, Fiesta, Bestever Hugga Pet, Intelex, and Squishables.

8

31.     A side by side comparison makes it painfully obvious that there is little to no originality of design involved:



32. Attached as **Exh. N** are additional comparisons of other common designs, as to which Plaintiffs claim exclusive copyrights. For example, the common bumblebee design (at page 1) includes a fuzzy nose, black "hair" line, and balled antennae, much like the ladybug design shown above.

33. There is a clear commonality of each of these designs, as there are characteristics that are necessary to include so that the animal is recognizable. For example, a panda is always white with black spots, and a frog is always green with white eyes. See **Exh. N** (page 2).

34. PLUSHEZ pillow pets have several distinct features that set Plushez products apart from other competitors, and which are markedly different than Plaintiff's products. For example, Plushez pillow pets have sewn fabric eyes made of quality fabric, which are unique and markedly different from the plastic button eyes that the competitors use, including Plaintiff CJ.[2] Plushez's embroidered fabric eyes are unique colored designs, rather than the cheaper plastic black eyes which are sold by Plaintiff.

35. Plushez has copyright registration certificates for each of its own creative designs.

36. Moreover, Defendant's products are different colors, shades and shapes from those of Plaintiff's products, as well as other competitors. Attached as **Exh. O** are side by side comparisons of Plushez products and Plaintiff's products to show the substantial differences between the two brands of pillow pets.

---

[2] Upon information and belief, CJ's pillow pets' most recent designs now also have some products (purple ladybug and butterfly) with fabric eyes, and Bestever Hugga Pets, also recently began making fabric eyes. The Defendant's use of unique fabric eyes precedes Plaintiff's and is a safer design for younger children.

37. For example, on the bottom of page 1 of **Exh. O**, it can be seen that Defendant's duck, which has large, open-wide, detailed, embroidered eyes, eyelashes, and a patch of hair on its head, differs substantially from Plaintiff's duck, which lacks such expressive detail and has small plastic eyes.

38. Additionally, on page 1 of **Exh. O**, its is obvious that Defendant's sheep is notably different from Plaintiff's. Defendant's has a wide mouth, embroidered eyes, two (2) nostrils rather than a nose, and a white fluffy coat and ears. Plaintiff's sheep has significantly different details. While Plaintiff's sheep has a nose, which Snuggly's does not, the CJ sheep has more generic features overall. Both designs have a simple line for the mouth, but the shape is different.

39. Also on page 1 of **Exh. O**, it is clear that Defendant's monkey, which has large, detailed, embroidered eyes, round embroidered circles for the nose, differs substantially from Plaintiff's monkey, which has small plastic eyes, stitched lines for the nose, a smaller forehead, and a larger nose. Additionally, Plaintiff's monkey has smaller, different shaped ears than Defendant's monkey.

40. At the top of page 2 of **Exh. O**, it can be seen that Defendant's bumblebee, which has large, detailed, embroidered eyes, eyelashes, heart shaped wings and an oval-shaped face, differs substantially from Plaintiff's bumblebee which lacks such detail, has small plastic eyes, butterfly-like wings, and a round-shaped face.

41. The Defendant's bumblebee has a black nose, whereas Plaintiff's bumblebee, and most competitors' bumblebees, have a red nose. See **Exh. P**.

42.     Furthermore, on page 2 of **Exh. O**, it is obvious that Defendant's ladybug, which has large, detailed, embroidered eyes, eyelashes, a solid colored nose, and an oval-shaped face, differs substantially from Plaintiff's ladybug which lacks such detail, has small plastic eyes, spots on its nose, and a round-shaped face. Also, Defendant's ladybug has a much curvier mouth than Plaintiff's ladybug. The patterns on the two ladybugs are different; Defendant's ladybug has a round red area on the top of the body only, as opposed to Plaintiff's ladybug, which is completely red, with the exception of the feet.

43.     Again, as seen on page 2 of **Exh. O**, Defendant's frog, which has large, detailed, embroidered eyes, differs substantially from Plaintiff's frog which lacks such detail, has round cloth-ball eyes, and includes detailed stitching for the nose.

44.     On page 3 of **Exh. O,** it is clear that Defendant's cow, which has large, detailed, embroidered eyes, differs substantially from Plaintiff's cow, which has small plastic eyes, a much larger nose, smaller antlers, and a different patter consisting of many more black spots on the body and the face. Additionally, Defendant's cow has larger ears, which are solid black, as opposed to Plaintiff's cow, which has black, white, and beige ears. The Plushez cow has a symmetric pattern on the cranial portion, as opposed to Plaintiff's asymmetrical pattern.

45.     Moreover, the Plushez Penguin has a larger beak and a black line across the mouth, which gives the impression that the mouth is open. Additionally, the rear corners of the penguin are yellowish, whereas Plaintiff's corners are black.

46.     As clearly depicted in Exh. O, none of Plaintiff's designs and Defendant's designs are substantially similar, however, they inevitably share some common elements which are part of all common designs used in the plush toy industry.

47. Of course, a lady bug is red with black spots, a frog is green, and a duck is yellow. A panda bear is always depicted in white with black eyes by every manufacturer. See **Exh. Q**.

Functional Velcro Strap and Legs Are Not Exclusive Trade Dress/Copyright

48. The velcro strap used by Plaintiff and Defendant is not trade dress or copyright as Plaintiff claims, but is a common functional aspect used by many manufacturers including:

- Fiesta (has corners with triangles for legs)
- Kellytoy USA
- Intelex
- Bestever Hugga Pets
- Animallow
- Zoobies
- Cuddlee Pets ™
- Mary Meyer Animal Pillows
- Cloud B (Sheep, polar cub)

49. Clearly, Plaintiffs' designs are not original, and any alleged confusion among Plaintiffs' and Defendants' products is not a result of Defendants' actions, but rather a result of the commonality of the designs and Plaintiff's adoption of a generic phrase as part of its trademark.

50. Attached hereto at **Exh. R** is a true and accurate copy of the Defendant's Answer filed herein, which asserts numerous affirmative defenses, including laches and unclean hands, and three counterclaims, including a claim for declaratory judgment finding that Plaintiff has no enforceable copyright, trademark or trade dress.

**LACHES**

51. Upon information and belief, Plaintiffs have not brought copyright infringement suit against other competitors such as American Mills, Fiesta, Aroma Home (Pillow Friendz), Squishables, Bestever Hugga Pet, Multipet International (ladybug), and Kelleytoy.

52. Many of these products more closely parallel Plaintiffs' designs than do Defendant's. For example, the ladybug manufactured by Aroma Home, American Mills and Multipet all have freckle-like spots on the nose, just like Plaintiffs' ladybug. Defendant's ladybug does not possess such spots. See ¶ 31 above.

53. Additionally, some of Plaintiff's designs that date back to 2004 were first copyrighted in April of 2010. Plaintiff could have applied for copyright registrations of these earlier designs when they applied for the others in 2009. However, it appears Plaintiff hesitated to copyright the more common and popular designs since they knew that those designs were not their own, or that they were taken from pre-existing designs.

54. Similarly, although many of these companies use "pillow pets" trademark suit has not been brought against all such companies, including Multipet International, which uses Pillow Pets™ as part of its brand on labels.

55. Furthermore, Plaintiffs have allowed third parties to use "pillow pets" in their domain names to sell "My Pillow Pets" products, including ScottsPillowPets.com and Anita'sPillowPets.com See **Exh. S.**

56. Additionally, Plaintiffs have allowed competitors to continue to produce and market pillow pets, using near identical designs and the mark "pillow & pets." Attached

14

hereto as **Exh. T** is a photograph taken on May 17, 2011 in a shopping mall showing a ladybug and other common designs being sold as "Cuddly Pillow & Pets."

57. Finally, Furthermore, Plaintiffs misrepresent to the public that their copyright designs date back to 2004, despite the fact that many of their designs were first copyrighted in 2009. Attached as **Exh. U** are Plaintiffs' copyright designs indicating the years of registration.

I declare under the penalty of perjury that to the best of my knowledge, the foregoing is true and correct.

Dated: Staten Island, New York
May 31, 2011

By: _____
Daniel C. Marotta, Esq.