Jason M. Drangel (JMD 7204)

Robert L. Epstein (RE8941)

William C. Wright (WCW 2213)

EPSTEIN DRANGEL LLP

Attorneys for Plaintiffs

60 East 42nd Street, Suite 2410

New York, NY 10165

Tel: 212-292-5390

Fax: 212-292-5391

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                                        :

CJ Products LLC and Ontel Products     :
Corporation
                                          :

Plaintiffs                                  :
                v.                        :     Civ Action No.  11- 0715 (RRM)
                                          :

Snuggly Plushez LLC and Berkant Keiskbas :
Defendants                                :
                                          :
-----------------------------------------------------X

**SECOND DECLARATION OF BRIAN WRIGHT**

I, Brian Wright, hereby declare as follows:

1.  I am general counsel for Plaintiff CJ Products. ("CJ") I have personal knowledge of the facts hereinafter set forth.

2.  I make and submit this affirmation in connection with Plaintiffs' Reply in support of its motion for a preliminary injunction.

3.  On February 19, 2010, CJ filed with the United States Patent and Trademark Office a trademark application for PILLOW PETS, Ser. No. 77/940,244, for

"Backpacks"; "Children's blankets"; "Slippers"; "Stuffed and plush toys; Stuffed dolls and animals; Stuffed toy animals; Stuffed toys".

4. The Examining Attorney refused registration, finding PILLOW PETS to be merely descriptive.   Subsequent to our outside counsel's argument, the Examining Attorney withdrew the merely descriptive refusal, and the application to register the mark PILLOW PETS, Ser. No. 77/940,244, was published for opposition on January 11, 2011, with only a disclaimer of the term PILLOW. Attached hereto as **Exhibit 1** is a true and correct copy of the file history for the trademark application for PILLOW PETS, Ser. No. 77/940,244.

5. No one other than Defendants have challenged CJ's trademark application for PILLOW PETS, Ser. No. 77/940,244, or any of CJ's trademark registrations that incorporate the terms: PILLOW PETS.

6. Competitors have found many alternatives to describe their foldable plush animal designs such as: pillows, cushions, transformative pillows, travel pillow, animal pillows, plush pillows, plush animal pillows, stuffed animal pillows, pillow animals and animal pet pillows. Attached as **Exhibit 2** are some samples of said usage.

7. None of the companies that Defendants allege as selling the same or similar plush pillow toys (Aroma Home ("Pillow Friendz")), Fiesta ("Transformable Pillows"), Kelly Toys ("Pillow Chums"), Intelex ("Pillowheads cushions"), American Mills ("Floor Cushions")) use the terms "pillow pets" to identify or promote their goods as trademarks or generically.  Attached as **Exhibit 3** are samples of said usage.

2

8. The registration of Cuddly Pillow & Pets, Reg. No. 3,866,164, in the name of SVG Global Inc. was voluntarily surrendered after SVG settled a lawsuit with Plaintiffs and agreed to phase out its use of said mark. Attached as **Exhibit 4** is a copy of the TARR record which shows the surrender.

9. Since 2009, Plaintiffs have worked through counsel to actively police the marketplace and educate consumers and competitors as to CJ's intellectual property rights.

10. Plaintiffs have sent hundreds of warning letters. Plaintiffs have filed eleven (11) lawsuits. Plaintiffs have settled eight (8) of the eleven (11) lawsuits, with each party agreeing to not use "Pillow Pets", as trademarks, trade names, Adwords or otherwise and to cease use of substantially similar plush toy designs.

11. Plaintiffs have engaged investigators to issue cease and desist letters to kiosk owners, mall owners and flea market retailers throughout the United States. Plaintiffs have also actively monitored the Internet and worked with Google, Amazon, Alibaba among others to attempt to make certain that Plaintiff's intellectual property rights are understood and enforced.

12. CJ has registered copyrights and trademarks with U.S. Customs and have cooperated with them to seize infringing products.

13. A company called MultiPet International sold plush toys for domesticated animals, not a plush stuffed toy for children. MultiPet used a "tm" to indicate it claims trademark rights since late 2008. We only found out about Multipet very recently and they agreed to phase out their use and have assigned their rights in and to the "Pillow Pets" trademark to CJ.

14. A search of Google using "pillow pets" reveals an overwhelming majority of references to Plaintiff and their PILLOW PETS branded products. Attached hereto as **Exhibit 5** are true and correct copies of print-outs taken from a Google search using the search terms "pillow pets".

15. CJ has also challenged "pillow pet" variant filings in the USPTO, resulting in abandonment and cancellation of trademark filings.

16. CJ mandates that its own retail customers agree not to advertise their website using or purchasing the trademarks PILLOW PETS and MY PILLOW PETS from any search engine or registering any URL that includes the terms "Pillow" or "Pet(s)". Attached hereto as **Exhibit 6** is a true and correct copy of CJ's standard Web Advertising Agreement.

17. UJ Trading, the source of Animallow foldable plush toys was sued by CJ for violating CJ's copyrighted designs. In April, 2011, UJ Trading agreed to a permanent injunction against further sales of Animallow products that were alleged to infringe CJ's copyrights.

18. Attached hereto as **Exhibit 7** are true and correct copies of print-outs taken from Plaintiff's website MYPILLOWPETS.COM, showing use of PILLOW PETS as a trademark.

19. Attached hereto as **Exhibit 8** is a true and correct copy of Plaintiff's Fact Sheet, showing use of PILLOW PETS as a trademark.

20. Not only does CJ use "PILLOW PETS" as a trademark for its foldable plush toys, but it also uses "PILLOW PETS" as a trademark for plush slippers, blankets and hats, *i.e.,* products that are not used as pillows.

4

21. Attached hereto as **Exhibit 9** are true and correct copies of dictionary definitions for "pillow" and "pet."

22. Nearly all magazine, newspaper and internet-based articles that discuss "Pillow Pets" that I have seen, do so in connection with a reference to Plaintiffs and or CJ's line of PILLOW PETS products.

23. Nearly every major U.S. mass retailer, including but not limited to Target, Walmart, CVS, Bed Bath & Beyond, FAO SCHWARZ, and Walgreens, sells Plaintiff's PILLOW PETS products. Attached hereto as **Exhibit 10** are true and correct copies of relevant excerpts from these retailer's websites and/or advertisements promoting the PILLOW PETS products.

24. Defendants argue that some of CJ's copyright registrations are defective because we indicate that Pillow Pets have been on the market since 2003, yet the earliest registration certificates indicate a publication date of 2004. None of the copyrighted designs that are the subject of this motion were first published in the United States in 2003. The 2004 publication dates in each copyright registration are accurate.

25. CJ has a valid copyright registration (VA 1-665-418) for its Ladybug plush toy design. It was simply mistitled as "Titles of Work: Untitled (Bumblebee Pillow Pet" with the "Contents Title: Untitled (LadyBug Pillow Pet)" by prior counsel. A correction has been filed with the U.S. Copyright Office by me. See **Exhibit C, Pg. 4** of my first Declaration. Attached as **Exhibit 11** is a copy of the deposit materials filed with Ladybug plush toy design application.

26. Defendants argue that "the copyright registration for the CJ Bear design is not

actually for the Bear that Plaintiff's alleged Defendants have infringed. This is not correct. The Bear deposit materials show the exact same Bear design sold today, only with different coloring. The new Bear design is dark brown with light nose and skin. Attached as **Exhibit 12** is a copy of the deposit materials filed with the Bear application. No new application was filed since only the coloring is different and would not be considered new copyrightable subject matter.

27. CJ's agreement with CRL permits CRL to sell plush items incorporating facets of the animal designs from the PILLOW PETS designs into Rounds, 32 inch floor cushions, slippers, standard plush animals, and even, for limited sales to third parties as plush foldable pillows.

28. CRL was permitted to sell limited quantities of plush foldable pillows.

29. The remaining companies identified as a selling products incorporating the alleged "common designs" (Kellytoy, CuddleBuzz, Interlex, Bestever) are doing so without authorization from CRL or CJ.

30. Kellytoy was sent a warning letter for its activities and no longer sells similar designs. Their "Pillow Chum" products now resemble more life-like animals and each design has extendable legs and feet. See **Exhibit 13** for an example of said product.

31. The Mary Meyer products referred to generically as "plush pillow body" were first discovered in connection with this Motion. In any event, the Mary Meyer designs have different body shape, legs and facial features and appear to be recent releases. See **Exhibit 14** for an example of said product.

32. Bestever sells foldable pillow products called "Hugga Pets" that do not look like Plaintiff's design and have legs and feet. See **Exhibit 15** for a variety of examples of said product.

33. The Interlex products were first discovered in connection with this Motion, but as far as we know the products are not sold in the United States and only appear to be a recent product release.

34. None of these designs pre-date CJ's copyrighted designs.

35. CJ owns copyright registrations on nearly forty (40) different animal designs and none were rejected by the Copyright Office.

36. CJ's plush foldable facial designs have oversized, oval smiley, beady eyed look and feel.

37. CJ does not claim exclusive rights to Velcro straps or plush pillows.  The body shape that the secured Velcro straps create on CJ's PPILLOW PETS products is, however, copyrightable subject matter.

38.  When the Velcro is secured, it creates a unique shaped animal, a shape which is protected by CJ's copyright registrations. When the Velcro strap is released, it also creates a unique shaped animal, a shape also protected by Plaintiff's copyright registrations. An example of one of Plaintiff's designs shown lying flat and as a standing plush animal toy appears below:



39. CJ's copyright registrations cover a plush animal 3-D design, evidenced in deposit materials in both secured Velcro and released Velcro positioning.

40. Defendants reference the following third parties that use Velcro straps to convert products from pillows to standing stuffed animals: Fiesta, Kellytoy, Intelex, Bestever Hagga Pet, Animallow, Zoobies, Cudddlee Pets, Mary Meyer Animal Pillows and Cloud B.

41. Defendants conveniently do not show pictures of said designs since they are distinguishable body shape, legs and facial features lying down and standing. None of the designs have triangles for legs and feet, a feature that adds to the unique overall look and feel of Plaintiff's copyrighted designs. Further, the fabrics and shapes are distinguishable.  Attached as **Exhibit 16** is an example of the Cloud B product; **Exhibit 17**  contains two examples of Zoobie products; **Exhibit 18**  contains examples of Fiesta products; and **Example 19** is an example of a Russ product.

42. Attached as **Exhibit 20** are more top-bottom and side-by-side comparisons of CJ's and Defendants animal designs at issue in this Motion.

43. Attached as **Exhibit 21** are all ten (10) of CJ's and Defendants animal designs at issue in this Motion shown together.

8

44. Attached as **Exhibit 22** are forward facing front and back Velcro strapped Lady Bug samples (from Left to Right) of the Cloud B, Zoobies, Plushez, CJ Products, and Bestever. Only the Plushez and CJ products are rectangular designed with triangular corners and pinkish hue faces with red noses. The dimensions and plush are also near identical for only these two designs.

45. Attached as **Exhibit 23** are reports printed out from Quantcast.com ("Quantcast"), a website that measures how frequently visitors go to a website.

46. A review of Quantcast visitor data when you search "Pillow Pets" reveals seven websites. *See Pg. 2 of Exhibit 23.* The first four websites are owned or controlled by CJ. The fifth website is Pillowpets.co, owned by Defendants. It shows that Pillowpets.co has a ranking nearly as high as Plaintiffs other websites. Note that no other third party "pillow pets" domain name ranks anywhere higher that Defendants pillowpets.co. and none are even close by nearly 530,000 websites. Also, this report shows that visitors to the Pillowpets.co website is increasing, while all of Plaintiffs are declining.

47. This evidence shows that Defendants are reaping the benefits of their aggressive use of "pillow pets" Adwords that misdirected consumers to the Pillowpets.co website, since Defendants' site Pillowpets.co is ranked as high as Plaintiffs' websites.

48. Pg. 3 of **Exhibit 23** shows the trend of visitors to the Pillowpets.co website. You can see that there was no activity through February, 2011 and major increase in activity beginning in April, 2011.

49. Pg. 4 of **Exhibit 23** shows that there are nearly no website visitors for the

Plushez.com website.

I declare under the penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: 6/9/11.          By: _Brian A Wright_
                             Brian Wright

10