

June 28, 2011

**Via ECF and Facsimile**

Judge Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *CJ Products, et al v. Snuggly Plushez, Inc. et al. - 11 Civ. 0715 (RRM)*

Dear Judge Mauskopf:

    We represent Plaintiffs in the above captioned case. As requested, we are sending a summary of how courts consider Google Adwords in Lanham Act claims. In the Second Circuit, the principal case is *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009). In *Rescuecom*, the Second Circuit found that Google's sale of trademarks as keywords to trigger search engine advertising was a "use in commerce" under the Lanham Act. The court rejected Google's argument that inclusion of trademarks in an internal computer directory cannot under any circumstances constitute trademark use. This decision opened the door for trademark owners to challenge keyword sales in the Second Circuit. The decision also brings the Second Circuit into line with the majority view of other Circuit Courts that this activity can be the basis for a Lanham Act claim.

    Just days before the Second Circuit's decision in *Rescuecom*, the District Court of Massachusetts addressed a similar fact pattern to the claim here in *Hearts on Fire Co, LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274 (D. Mass. 2009). The diamond retailer, Hearts on Fire, claimed that Blue Nile (a competing diamond retailer) infringed its HEARTS ON FIRE trademark. Blue Nile purchased the HEARTS ON FIRE mark as a search engine keyword to trigger the display of sponsored advertisements that linked to Blue Nile's website. Some of these sponsored ads contained the HEARTS ON FIRE mark in the ad text, while others did not. The Court denied the defendant's motion to dismiss, holding that the defendant's purchase of the plaintiff's trademark was a "use in commerce." The court noted that "use in commerce" alone is not enough to prove infringement. Hearts on Fire must also prove that "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." According to the court, a consumer who had just entered a search for HEARTS ON FIRE diamonds "might easily believe" that Blue Nile was an authorized Hearts on Fire diamond retailer when presented with the sponsored link, even if the ad did not contain the HEARTS ON FIRE mark. The court believed that the likelihood of confusion would "ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." The court then articulated a list of non-exclusive factors it would consider when judging the "content and context," including: (1) the overall mechanics of web-browsing and Internet navigation, in which a consumer can easily reverse course; (2) the mechanics of the specific consumer search at issue; (3) the content of the search-results web page that was displayed, including the content of the sponsored link; (4) downstream content on the defendant's linked website likely to compound any confusion; (5) the web-savviness and sophistication of the plaintiff's potential customers; (6) the specific context of a consumer who has deliberately searched for trademarked diamonds only to find a sponsored link to a diamond retailer; and, in view of the foregoing factors, (7) the duration of any resulting confusion.

Judge Roslynn R. Mauskopf
United States District Court
Eastern District of New York
June 28, 2011
Page 2

More recently in *Network Automation Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (Ninth Cir. 2011), the Ninth Circuit acknowledged that the *Hearts On Fire* "reasoning was useful", but the Court refused to adopt "another multifactor test", instead relying upon the Ninth Circuit likelihood of confusion standard designated in *Sleekcraft*. Network Automation, Inc. ("Network") sold job-scheduling software under its AUTOMATE mark. Advanced Systems Concepts, Inc. ("Systems") sold competitive job-scheduling software under the federally-registered mark ACTIVEBATCH. Network purchased ACTIVEBATCH as a search-engine keyword, which triggered Network's sponsored ads in the search results. Network's sponsored ads did not contain the ACTIVEBATCH mark in their title or text. Network identified itself only with its URL in the fourth line of the ads; neither the ad title nor test identified Network. The titles of the ads included "Batch Job Scheduling" and "Windows Job Scheduling." Systems objected to Network's actions, and Network filed for a declaratory judgment that its purchase of ACTIVEBATCH as a keyword did not constitute trademark infringement. Systems counterclaimed for trademark infringement and moved for a preliminary injunction. The district court sided with Systems and issued a preliminary injunction against Network's use of ACTIVEBATCH as a search-engine keyword. The district court initially found that Systems was likely to succeed in proving that Network's actions constituted "use" of the ACTIVEBATCH mark in commerce.

On appeal, the Ninth Circuit vacated the injunction. As an initial matter, the Ninth Circuit expressly agreed with the Second Circuit's view that the use of a trademark as a search-engine keyword to trigger the display of a competitor's advertisement was a "use in commerce" under the Lanham Act. The case thus turned on whether this activity was likely to cause consumer confusion. Network argued that its use of ACTIVEBATCH was legitimate "comparative, contextual advertising" that presented sophisticated consumers with clear choices. Systems argued that Network's use of ACTIVEBATCH misled consumers by "hijacking their attention with intentionally unclear advertisements."

The Ninth Circuit began its substantive analysis by clarifying that the eight traditional *Sleekcraft* likelihood-of-confusion factors are "not a rote checklist" to be applied rigidly, but rather were intended to be an "adaptable proxy for consumer confusion" such that some factors may be more important than others in a particular case. The Ninth Circuit reviewed all of the *Sleekcraft* likelihood-of-confusion factors and held that the most relevant factors for keyword-advertising cases were: (1) strength of the mark, (2) evidence of actual confusion, (3) type of goods and degree of care likely to be exercised by the purchaser; and (4) labeling and appearance of the sponsored ads and the surrounding context on the search-results page.

Regarding the strength of the mark, the court stated that Internet users searching for a distinctive term are more likely to be looking for a particular product, and may be more susceptible to confusion when exposed to sponsored ads touting a similar product from a different source. It agreed with the district court that this factor favored Systems because ACTIVEBATCH was a suggestive, federally registered mark. Next, the Ninth Circuit stated that while evidence regarding actual confusion was relevant in keyword cases, its importance was diminished at the preliminary injunction stage of a case and the district court correctly accorded this factor no weight. Regarding the type of goods and degree of care exercised by consumers, the Ninth Circuit noted that this factor is "highly relevant" to determining likelihood of confusion in keyword cases. Lastly, the Ninth Circuit examined an additional factor not present in the *Sleekcraft* factors: the labeling and appearance of the sponsored ads and their surrounding context on the search-results page. The district court correctly examined the text of Network's sponsored ads and concluded that the ads did not clearly identify their source, but it did not consider the surrounding context. In this regard, the Ninth Circuit referenced its decision in *Playboy v.*

Judge Roslynn R. Mauskopf
United States District Court
Eastern District of New York
June 28, 2011
Page 3

*Netscape* involving keyword-triggered banner ads, which found it important that: (1) "clear labeling" of the banner ads might have eliminated the likelihood of initial-interest confusion, and (2) the search results page did not "clearly segregate" the banner ads from the organic search results. The Ninth Circuit contrasted this second point with the present case in which "Google and Bing have partitioned their search results pages so that the advertisements appear in separately labeled sections for 'sponsored' links." The Ninth Circuit concluded that the district court did not weigh the likelihood-of-confusion factors flexibly to match the specific facts of this keyword case, reversed the granting of the preliminary injunction, and remanded the case for further proceedings consistent with its opinion.

To our knowledge, neither the Second Circuit nor the District Courts in the Second Circuit have indicated that a likelihood of confusion or other multifactor analysis should be undertaken in connection with an Adword Lanham Act claim. Likewise, it is not clear what *Polaroid* factors would be relevant to the analysis. What is clear is that Defendants use Plaintiff's PILLOW PETS trademark as an Adword to intentionally mislead and confuse consumers. The consumer is confused from the initial search results page through to the ending Pillowpets.co webpage. At all stages, the consumer is lead to believe that Defendants are the source of "original" and "authentic" As Seen On TV Pillow Pets. *Drangel Dec., Ex. E*. Most courts that have analyzed Adwords fact patterns in Lanham Act claims have done so in the context of initial interest confusion. In most cases, there is less likelihood of confusion with an initial interest claim. Here though, Defendants have engaged in intentional, bad-faith, false advertising and false associations leading consumers to the confusing Pillowpets.co website where knock-offs are sold. *Plaintiff's Memo of Law in Support of Motion for Preliminary Injunction, Pgs. 18-21*. At each step, Defendants openly use Plaintiff's PILLOW PETS trademark. There is no question that in considering the relevant *Polaroid* factors, Defendants conduct has caused a likelihood of confusion. The likelihood of confusion has been briefed (*Plaintiff's Memo of Law in Support of Motion for Preliminary Injunction, Pgs. 20-21*) and argued in person. However, where a defendant adopted the plaintiff's mark with the intent of obtaining benefit from the plaintiff's business reputation, this fact alone may be sufficient to justify the inference that there is a likelihood of confusion. *Resource Dev.*, 926 F.2d *at* 141 ("once it is shown that a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion.") For these reasons, the injunction should extend to bar Defendants use of "pillow pets" and "my pillow pets" Adwords during the course of this action.

Sincerely,

Jason M. Drangel

cc: Counsel for Defendants (via e-mail/ECF)